LILLIAN STEBURG *et al.*, Plaintiffs-Appellees, v. RICHARD S. SWANSON, Defendant-Appellant (John A. Steburg, Defendant).

Third District   No. 3—89—0367

Opinion filed June 22, 1990.

HEIPLE, P.J., dissenting.

Richard S. Swanson, of Asheville, North Carolina, appellant *pro se.*

Edward Stone, of Stone & Thurman, of Geneseo, for appellees.

JUSTICE STOUDER delivered the opinion of the court:

The plaintiff trustee, Central Trust & Savings Bank of Geneseo, filed a petition for directions from the trial court on the final distribution of a trust fund created by John A. Steburg for the care and support of his estranged wife, Lillian, and their daughter, Ruby. Lillian and Ruby had died, leaving no reason for the continuation of the trust. The trial court directed the trustee to distribute the funds to Ruby's heirs. Defendant Richard S. Swanson, the sole heir of John A. Steburg's estate, appeals.

The record reveals that on January 28, 1953, John Steburg executed a trust agreement. The agreement stated that he intended to sell his undivided one-half interest in a farm for a sum in excess of $20,000. It also provided for the transfer of $10,000 from the proceeds of that sale to Lillian, in settlement of a maintenance action she had brought against him.

The agreement further provided for the transfer of $10,000 to Central Trust & Savings Bank as trustee with directions that the net

income of the trust be used for Ruby's care and support and for Lillian as long as she continued caring for Ruby. In the event Lillian died before Ruby, or if at any time she failed to care for Ruby, the money was to remain in trust and the net income was to continue to be used for Ruby's care. If Ruby predeceased Lillian, Lillian was to receive the entire balance of the trust fund and all of the undistributed income. No provision was made for the distribution of the funds in the event Lillian died then Ruby died.

The record further reveals that John and Lillian subsequently divorced, and John remarried. John and his second wife, Mabel, executed joint and mutual wills in which they named John's second cousin, Richard S. Swanson, as their sole heir. When John and Mabel died, Richard was decreed the sole heir and legatee of their estate.

Lillian Steburg died on March 30, 1982, and Ruby died the following year. On October 18, 1988, the trustee filed a petition for directions from the court regarding the final distribution of the trust funds. In his response to the petition, Richard Swanson alleged that as the sole heir of John Steburg's estate, any funds remaining in the trust passed to him under the residuary clause of John's will.

The trial court initially noted that a gap existed in the trust agreement since there were no provisions for the trust funds in the event Ruby died after her mother. The court therefore looked to John's intent when he created the trust. It found that John had created the trust to provide for the support of his daughter and wife. It also found that John was "purchasing a peace" with Lillian in the maintenance action she had brought against him. The trial court therefore concluded that John had not intended to retain any interest in the trust fund and that the principal along with any accrued income passed to Ruby's heirs.

On appeal, Richard argues that since the trust agreement was silent as to the distribution of funds in the event Ruby died after her mother, a reversionary interest was thereby created in John's estate. He further argues that it was not necessary for the trial court to look to John's intent, since the language of the trust agreement was clear and unambiguous.

■■ ■ Initially, we note that the same rules of construction applying to wills also apply to trusts. (*First National Bank v. Canton Council of Campfire Girls* (1981), 85 Ill. 2d 507, 426 N.E.2d 1198.) Where the words used in a trust agreement are plain and their meaning is clear, the plain intention will prevail over the presumed intention. (*Northern Trust Co. v. Winona Lake School of Theology* (1978), 61 Ill. App. 3d 966, 377 N.E.2d 1182.) However, where the trust is

silent on a particular question, in the sense that it contains no express answer to the question, then a construction of the trust is necessary. (See *Northern Trust Co.*, 61 Ill. App. 3d at 971, 377 N.E.2d at 1186.) The primary rule of trust construction is to ascertain the intention of the settlor when the instrument was executed and to give effect to that intention as long as it is not contrary to law or public policy. *First National Bank*, 85 Ill. 2d at 513, 426 N.E.2d at 1201.

The instant trust agreement failed to provide for the final distribution of funds in the event Ruby died after Lillian. Accordingly, the trust contained no express answer to this question and a construction of the trust was necessary. In construing the trust agreement, the trial court concluded that John did not intend to retain any interest in the trust. We agree.

The trust was created for the care and support of Ruby. Lillian was also to receive a portion of the net income of the trust as long as she continued caring for Ruby. More important, however, the agreement provided that if Ruby died before her mother, Lillian would receive the entire balance of the trust fund. It is difficult to imagine that John intended to retain any interest in the trust in light of the fact that he specifically stated that if his daughter predeceased her mother, the entire trust fund would go to his ex-wife. Moreover, the agreement provided that $10,000 was to go to Lillian in settlement of a maintenance action she had brought against him. Thus, the circumstances surrounding the creation of the trust also indicated that John was relinquishing any interest in the trust in compromise of a suit against him.

Therefore, we are unable to find that John intended to retain any interest in the trust when he created it. As such, the trial court did not abuse its discretion in finding that the remaining funds in the trust were to be distributed to Ruby's heirs at law. See *Northern Trust Co. v. Winona Lake School of Theology* (1978), 61 Ill. App. 3d 966, 377 N.E.2d 1182.

The judgment of the circuit court of Henry County is affirmed.

Affirmed.

BARRY, J., concurs.

PRESIDING JUSTICE HEIPLE, dissenting:

This suit involves the final distribution of a trust fund created by John A. Steburg for the care and support of his estranged wife, Lillian, and their daughter, Ruby. Lillian died on March 30, 1982, and

Ruby died on September 19, 1983. The trust contained no provision for the distribution of the trust funds in the event Lillian died then Ruby died. Both the trial court and a majority of this court find that since the trust is silent on this particular question, a construction of the trust is necessary. In construing the trust agreement, the trial court and majority conclude that John did not intend to retain any interest in the trust and find that the remaining funds in the trust were to be distributed to Ruby's heirs at law. Since the trust agreement was a complete, unambiguous expression of John's intent, I dissent.

The relevant portion of the trust provides:

"I, [John A. Steburg], *** hereby convey *** the *** sum of $10,000.00 *** to the Central Trust & Savings Bank of Geneseo, Illinois, as Trustee *** in trust to hold and safely invest the same and pay the net income thereof to the said Lillian Steburg for the use and support of [her] and our daughter, Ruby Steburg, as long as [she] shall care for and support *** Ruby Steburg: and, if [she] shall die before the said Ruby Steburg, or, if [she] shall, at any time, fail to care for and support the said Ruby Steburg, then in trust to pay the net income for the use, care and support of the said Ruby Steburg as long as she lives: and if the said Ruby Steburg shall die before the said Lillian Steburg, the entire balance of said trust fund, and all undistributed increase and income therefrom, shall be paid to the said Lillian Steburg as her absolute property."

The clear language of the trust instrument set forth the following: (1) if Lillian died before Ruby, the trust funds would go for the care of Ruby as long as Ruby lived; and (2) if Ruby died before Lillian, then Lillian would receive a fee simple interest in the entire balance of the trust fund and all of the undistributed income. There is no ambiguity to this trust agreement. Moreover, John's express intent was fully accomplished. When Lillian died, the trust funds were used for Ruby's care. Thereafter, when Ruby died the purpose of the trust ceased.

In ascertaining the intent of the trust settlor, the court must first look at the instrument itself, and only if an ambiguity exists must the court consider the surrounding circumstances at the time the instrument was executed in order to determine the settlor's intent. (*Continental Illinois National Bank & Trust Co. v. Clancy* (1959), 18 Ill. 2d 124.) It is not the function of the court to modify a trust document or create new terms different from those to which the parties have agreed. (*In re Estate of Ierulli* (1988), 167 Ill. App. 3d 595.) The court is limited to establishing not what the settlor meant to say, but what was meant by what he did say. (*Kavanaugh v. Estate of Dobrowolski*

(1980), 86 Ill. App. 3d 33.) Additionally, the general rule is that where an express trust is created, every interest not embraced in the trust reverts to the settlor of the trust. 90 C.J.S. Trusts, §201 (1955).

Here, the trial court went beyond the clear language of the document and erroneously attempted to fill an imaginary gap in the trust agreement. The majority acquiesces in this spurious exercise. Because the instant trust agreement was unambiguous, the remaining interest in the trust reverts back to the settlor of the trust rather than being distributed to Ruby's heirs. Accordingly, I dissent.